Matter of Jensen (Commissioner of Labor) (2024 NY Slip Op 06253)

Matter of Jensen (Commissioner of Labor)

2024 NY Slip Op 06253

Decided on December 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 12, 2024

CV-22-2345
[*1]In the Matter of the Claim of David Jensen, Appellant. Commissioner of Labor, Respondent.

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

New York Legal Assistance Group, New York City (Ciara Farrell of counsel), for appellant.
Letitia James, Attorney General, New York City (Gary Leibowitz of counsel), for respondent.

Egan Jr., J.P.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed June 2, 2022, which, upon reopening and reconsideration, ruled that claimant was ineligible to receive unemployment insurance benefits.
Claimant worked as a per diem substitute teacher for the employer for several years, including during the 2019-2020 school year. Following the end of that school year, claimant certified for and received unemployment insurance benefits for the period of June 26, 2020 to September 6, 2020 that included regular unemployment insurance benefits, federal pandemic unemployment compensation and pandemic unemployment assistance and lost wages assistance. The Department of Labor subsequently determined that claimant was ineligible to receive benefits for the period between academic terms because he had received a reasonable assurance of continued employment from the employer for the 2020-2021 school year, and he was charged with recoverable overpayments of the state and federal funds received. Following a hearing, an Administrative Law Judge upheld the denial of benefits and concluded that claimant was not entitled to state or federal unemployment benefits and that the overpayments were recoverable. Upon administrative appeal, the Unemployment Insurance Appeal Board affirmed. By decision filed June 2, 2022, the Board granted claimant's application for a reopening and reconsideration and adhered to its prior decision. Claimant appeals from the June 2022 decision.
We affirm. "[P]ursuant to Labor Law § 590 (10), a professional employed by an educational institution is precluded from receiving unemployment insurance benefits for the period between two successive academic years when he or she has received a reasonable assurance of continued employment" (Matter of Gracy [Commissioner of Labor], 182 AD3d 871, 872 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Matter of Barnett [Broome County Community Coll.-Commissioner of Labor], 182 AD3d 763, 763 [3d Dept 2020], lv denied 35 NY3d 1077 [2020]). "A reasonable assurance has been interpreted as a representation by the employer that substantially the same economic terms and conditions will continue to apply to the extent that the claimant will receive at least 90% of the earnings received during the first academic period" (Matter of Felipe [New York City Sch. Dist.-Commissioner of Labor], 175 AD3d 1698, 1699 [3d Dept 2019] [internal quotation marks and citations omitted]). "Notably, the question of whether a claimant received a reasonable assurance of reemployment for the following academic year is a question of fact and, if the Board's findings in that regard are supported by substantial evidence, they will not be disturbed" (Matter of Gracy [Commissioner of Labor], 182 AD3d at 872 [internal quotation marks and citations omitted]; see Matter of Felipe [New York City Sch. Dist.-Commissioner of Labor], 175 AD3d at 1699).
Here, claimant worked a total of 59 days during the 2019-[*2]2020 school year, with his last day of work on March 10, 2020, shortly before in-person instruction at the employer's schools ended due to the COVID-19 pandemic. The employer thereafter emailed claimant on March 19, 2020 to advise him that, while many substitute teachers with long-term assignments would continue working despite the closure of the schools to in-person instruction, others might "not have work right now or in the foreseeable future." The email nevertheless indicated that work remained available for substitute teachers without a long-term assignment, as it pointed out that the employer was opening up Regional Enrichment Centers to serve the children of essential workers and encouraged claimant and other substitute teachers to sign up for work at the centers at their regular rate of pay. Claimant performed no additional work for the employer in the spring of 2020, but the record reflects that he first made himself unavailable in the database used to offer work to substitute teachers, then may have prevented any further offers by "repeatedly . . . making himself unavailable and available" in the database. Claimant knew that there was work to be done during this period, as he acknowledged in his hearing testimony that the employer was "short of people" and "needed" help in the spring of 2020 and indicated that he did not seek in-person assignments out of concerns for his health.
Thereafter, on June 17, 2020, the employer emailed claimant a "Reasonable Assurance Letter" notifying him that per diem substitute teachers would be needed during the 2020-2021 school year under terms "substantially the same as in the 2019-2020 school year" and that the employer anticipated that there would "be as much work for" them as had been available during the 2019-2020 school year. The record gave no reason to believe that the employer's assurances in that regard were illusory and, indeed, the employer's manager of school-based support services testified that the employer correctly anticipated that "there would be a higher need of substitutes" in the 2020-2021 school year because its schools would be providing a variety of remote, hybrid and in-person instruction options. Moreover, since claimant knew that work had remained available in the 2019-2020 school year after the closure of the schools to in-person instruction, he had no obvious reason to doubt those assurances. On June 29, 2020, claimant acknowledged receiving the email notification that work would be available during the 2020-2021 school year.
In our view, "[s]uch proof, 'together with the testimony concerning the per diem rate of pay for the [2020-2021] academic year and number of potential work days available, provides substantial evidence supporting the Board's finding that the employer provided claimant with a reasonable assurance of continued employment' " so as to render him ineligible for unemployment insurance benefits in the summer of 2020 (Matter of Alongi [City Sch. Dist. of the City [*3]of N.Y.-Commissioner of Labor], 227 AD3d 1341, 1344 [3d Dept 2024], quoting Matter of Gracy [Commissioner of Labor], 182 AD3d at 873; see Matter of Felipe [New York City Sch. Dist.-Commissioner of Labor], 175 AD3d at 1699-1700; Matter of Cieszkowska [Commissioner of Labor], 155 AD3d 1502, 1502-1503 [3d Dept 2017]). Thus, the Board's decision must be affirmed "even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; accord Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136 [2020]).
Pritzker and Powers, JJ., concur.
McShan, J. (dissenting).
We respectfully dissent, as we believe that the June 2020 correspondence sent by the employer to claimant did not convey a reasonable assurance of reemployment in light of the unique circumstances existing at that time. The record establishes that claimant's last day of work was eight days prior to the March 18, 2020 cessation of in-person instruction at New York City schools brought on by the COVID-19 pandemic. The following day, the employer sent an email to the substitute teachers acknowledging that, due to the closure of the schools, work for substitute teachers was limited, further acknowledging that there are "those of you who do not have work right now or in the foreseeable future." In the email, the employer announced that, on March 23, 2020, it would be opening 80 Regional Enrichment Centers (hereinafter RECs) in order to serve the children of first responders, healthcare workers and other workers vital to the operation of the city, and subcontractors were encouraged to work at the RECs. Claimant marked himself as unavailable to work between March 20, 2020 and April 3, 2020 based upon concerns for his health, but he later deleted his unavailability on April 1, 2020 and there is no indication that he marked himself as unavailable again after that date. Nevertheless, the employer did not contact claimant for any jobs after in-person instruction ended. After the school year concluded, the employer sent claimant a form correspondence in June 2020 that purportedly provided a reasonable assurance of employment in the following school year, but made no reference to the prior closure or the plan to reopen in light of the ongoing pandemic.
Although a reasonable assurance does not equate to a guarantee of employment (see Matter of Enman [New York City Dept. of Educ.-Commissioner of Labor], 161 AD3d 1368, 1370 [3d Dept 2018], lv denied 32 NY3d 902 [2018]), the employer's use of a form letter that made no reference to the conditions that existed at that time — specifically, that schools remained closed to in-person instruction — was unreasonable under the circumstances. Although the employer's representative was apparently aware that there would be higher need for substitutes based upon the anticipated increase in alternative methods of instruction, the employer's June 2020 form [*4]letter advising claimant that the economic terms and conditions would be substantially the same in 2020-2021 as they were in 2019-2020 was sent at a time when schools remained closed, made no reference to the employer's plans and gave no indication as to whether or when the schools would reopen the following year in light of the ongoing pandemic (see Matter of Upham [Dutchess Community Coll.-Commissioner of Labor], 132 AD3d 1221, 1222 [3d Dept 2015]; compare Matter of Alongi [City Sch. Dist. of the City of N.Y.-Commissioner of Labor], 227 AD3d 1341, 1344 [3d Dept 2024]; Matter of Gracy [Commissioner of Labor], 182 AD3d 871, 872-873 [3d Dept 2020]).[FN1] Further, we do not believe that the availability of work at RECs immediately following the closure of schools to in-person instruction and claimant's acknowledgment that help was needed at that time bear any relevance to the inquiry before us, as that offering was unique to that period and did not otherwise reflect that work would be available in the following school year on similar terms to those that claimant had worked up until March 2020. Accordingly, under the particular circumstances presented, we believe that claimant was not provided a reasonable assurance of continued employment and we would therefore reverse.
Lynch, J., concurs.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: Also notable, claimant could not depend on the protection of a collective bargaining agreement as an assurance of employment in the following school year (see Matter of Johnson [Commissioner of Labor], 222 AD3d 1115, 1119 [3d Dept 2023]; Matter of Overacker [Churchville-Chili Cent. Sch. Dist.-Commissioner of Labor], 213 AD3d 1127, 1128-1129 [3d Dept 2023]).